**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EUGENIO ANDINO-HERNANDEZ,** | : | |
| | | **CIVIL ACTION NO. 3:21-1570** |
| | : | |
| **Plaintiff** | | |
| | : | **(JUDGE MANNION)** |
| **v.** | | |
| | : | |
| **MS. MASON,** *et al.,* | | |
| | : | |
| **Defendants** | | |
| | : | |

## MEMORANDUM

### I. BACKGROUND

Plaintiff, Eugenio Andino-Hernandez, an inmate currently confined at the Mahanoy State Correctional Institution, Frackville ("SCI-Mahanoy"), Pennsylvania, filed the above caption civil rights action pursuant to 42 U.S.C. §1983. (Doc. 1). The named Defendants are Correct Care Solutions, Wellpath, LLC, PA Jenna Williams, PA Donald O'Brien, Dr. Baddick, Dr. Rodgers, and Dr. Bora ("Medical Defendants") and Department of Corrections ("DOC") employees: Superintendent Bernadette Mason, Deputy Superintendent Lori White, Deputy Superintendent Charles Stetler, former Corrections Healthcare Administrator John Steinhart, Licensed Practical Nurse Jaclyn Brown, former Licensed Practical Nurse Alicia Beury, Lieutenant Wesley Matrey, Sergeant Robert Burger, Corrections Officer

Robert Torres, Corrections Officer Robert Derr, Lieutenant Steven Taylor, Corrections Officer Joseph Gavala, and Corrections Officer Joseph Martin, ("Corrections Defendants"). Id.

Plaintiff alleges Eighth Amendment, Fourteenth Amendment, and ADA violations from two separate incidents that occurred at SCI-Mahanoy. Id. Specifically, Plaintiff claims that on October 19, 2019, he was moved to Cell #2 in the Restricted Housing Unit ("RHU") at SCI-Mahanoy. Id. He alleges that, although he had "bottom bunk status" due to having an I.V.C. Filter in his Vena Cava Vein, he was instructed to enter the cell with another inmate who already occupied the bottom bunk. Id. Shortly thereafter, Plaintiff fell while dismounting the top bunk. Id. He claims the nurse and staff failed to provide immediate medical treatment following his fall. Id. Several months later, on February 24, 2020, Plaintiff alleges he was forced to use a non-handicap shower over his objections and fell, hitting his lower back on the shower step. Id. Plaintiff files the instant action seeking compensatory and punitive damages for "the injuries sustained and suffered," as a result of Defendants "medical indifference and negligence, in violation of Eighth Amendment, Americans with Disabilities Act and Medical Professionalism." Id.

- 2 -

Presently before the Court are two separate motions to dismiss filed on behalf of the Corrections and Medical Defendants. (Docs. 29, 30). The motions are fully briefed and ripe for disposition. For the reasons set forth below, the Court will grant, in part and deny, in part, the motions to dismiss.

## II. FACTUAL ALLEGATIONS IN THE AMENDED COMPLAINT

Plaintiff states that on October 21, 2019, he "fell victim to the tragic accident, which was in fact mishandled by this DOC's Facility's Medical Staff in their entire capacity." (Doc. 1). Specifically, Plaintiff states that "C/Os Gavala and Deer told [him] if [he] did not get in the cell [he] would receive a misconduct" and that "this was the cell [he] was forced into to get on top bunk when [he] had/have bottom tier/bottom bunk medical status." Id. He states that the "officers literally forced [him] into an unsafe situation of forcing [him] to climb to the top bunk and as the med-line nurse arrived to pass out medications in the RHU, [Plaintiff] was forced to try and climb down" from the top bunk, and he "slipped falling back first on the cell table then rolling off the table hitting the seat finally landing on the cell floor head first" and that "at that point [he] could not move anything" and was "in severe pain." Id. As Plaintiff lay on the ground, "nurse Alicia and Officer Rammer simply walked away from [his] cell door" and "kept it moving on simply passing out

- 3 -

medications for other inmates in the RHU and simply did nothing to help or assist [Plaintiff] promptly, adequately, let alone immediately after [he] fell." Id. Plaintiff states that when he tried to explain that he had a bottom bunk assignment, "Sgt. Burger told [him] to 'Shut the F up and go to sleep and that he wasn't moving [him] or anybody period; and that all cell assignments stay as is." Id. Plaintiff further claims that "Lt. Taylor, the RHU Lt., came to the cell after [Plaintiff] fell and was laying on the cell floor injured and threatened [Plaintiff]; telling [him] and [his] celly if [he] refuse to get that he will spray [him] with pepper spray." Id.

Plaintiff states that he was taken "to the outside hospital as [he] was in much pain from this fall." Id. Plaintiff claims "when [he] did come to [his] senses, [he] was literally in the hospital unable to move for a couple of hours" and the doctor said, "it might have been shock." Id. Plaintiff was released from the hospital with a walker. Id. When he returned from the hospital "back to the prison, [he] was given a prescribed prescription of a muscle relaxer and Tylenol." Id.

Plaintiff's second fall took place on February 24, 2020, "when [he] was forced/placed in a non-handicap shower by C/O Torres and C/O Martin while in the RHU/DTU." (Doc. 1 at 23). Plaintiff claims that "when [he] fell [he] was literally laying in filth on the dirty shower floor, hurt in severe pain" and

"Officers Gavel and Deer pulled [him[ aggressively at the shower, while [he] was hurt/injured in sever pain from the fall; these C/O's pulled [his] hands and legs" and "roughly placed [him] in a wheelchair." Id. Following the fall, Plaintiff states that "Dr. Rogers refused to have [him] transported to the outside E.R." and he "only had an x-ray and was placed/housed in the infirmary's POC cell." Id.

Plaintiff's further allegations against the medical Defendants are as follows:

- **Dr. Baddick**:  Dr. Baddick saw Plaintiff after an August 28, 2020, fall to assess Plaintiff's leg weakness and allegedly did nothing for him, although he alleges that Dr. Baddick provided a medical diagnosis, care and treatment. Plaintiff states that "following Dr. Baddick's complete medical diagnoses, care, and treatment I sent multiple DC-135A Request to staff slips to John Steinhart [seeking accommodations]").

- **PA O'Brien**: On August 28, 2020, PA O'Brien attempted to examine Plaintiff after he was brought to medical by nursing staff after he fell that morning due to his legs giving out. During the exam, Plaintiff alleges that PA O'Brien was rude to him and told him to stop playing games. Plaintiff also alleges that PA O'Brien demanded that he get onto the medical exam table although he injured his back that morning and was sitting in a wheelchair.

- **Dr. Rodgers**: Plaintiff alleges that after his first fall on or about October 21, 2019, Dr. Rodgers refused to adequately and properly treat him. He also alleges that after his second fall on February 24, 2020, Dr. Rodgers refused to have him transported to the outside emergency

- 5 -

room, although he had an X-ray and was placed in the prison infirmary for observation.

- **PA Williams**: On November 4, 2019, Plaintiff alleges that PA Williams saw him at medical at which time she informed him that only Tylenol would be prescribed for his ongoing pain secondary to an October 21, 2019, fall. Plaintiff also alleges that by November 4, 2019, it had been approximately a week since PA Williams said an order for Tylenol would be placed, but he had not been provided the medication as of that date.

(Doc. 1 at 21-22).

Plaintiff attaches, as exhibits to his complaint, more than two hundred pages of inmate's request to staff members, grievances, responses, appeals and final reviews, addressing his requests for medical attention, medication, and medical accommodations. (Doc. 1). Plaintiff's initial exhausted grievance regarding the medical care he received after his falls was addressed in an Initial Review Response dated September 16, 2020 as follows:

I am the grievance officer assigned to grievance #886638. You state that you are grieving the negligence, unprofessionalism, and indifference of PA Obrien. On 8/28/202 you were suffering serious ongoing pain in your lower back and legs most of the day. You went to urinate; your legs gave out and you fell at an awkward angle heavily crushing your tailbone. You called for the officer and were transported by wheelchair to the medical cart because you could not walk due to the pain. RN Winnie evaluated you in the medical department. You explained to her how this was the third time you have fallen, and the weakness/loss of feeling in your legs. You also discussed the sharp stabbing pains you are experiencing in your back, prickling at the bottom of your feet and incontinence of urine at times. PA

- 6 -

Obrien came to see you per RN Winnie's request. You state that he forcefully pushed the wheelchair back inside the triage room, demanding that you stop playing games and hop on the medical bed. He was cursing at you and said if you don't get on the bed right now, your getting the F*** out of medical. You tried to explain to him that you had an injury and were in pain. PA Obrien lost it, started yelling, cursing at you, and tried to forcefully take your cane away from you while denying you medical care. He forced you to return to your unit suffering in pain. As relief, you are seeking to have PA Obrien fired and to be properly diagnosis/treated or you will involve the civil courts for a monetary compensation of $400.00

After reviewing your medical record, you were seen by RN Winnie Chauvel. She stated in her note that you were having back pain and could not walk. You have a history of chronic back pain and use a cane. Tylenol does not work for you, and you cannot take Motrin due to being on a blood thinner. While seeing provider O'Brien you became confrontational, security was called, and you were sent back to the block by security. You were seen the next day (8/29/2020) by Dr. Baddick who wrote in his note that you were seen as an emergency triage for severe back pain and urinary incontinence sporadically. You have a history of falling of the top bunk in October of 2019 and was air lifted to the hospital. Your lumbar back pain has been increasing and has progressed to episodes of urinary incontinence beyond your control that is witnessed and verified by your wheelchair pusher. Patient has moderate weakness in his bilateral legs equally and states he has increased numbness bilaterally of lower extremities and feet. The physician's physical exam revealed moderate increased bilateral motor weakness, positive mild dysthesia in bilateral lower extremity to tactile and pain stimuli. Also, positive increased tenderness to palpation of lumbar spine. The doctor recommends an MRI of lower spine, prednisone taper, cyclobenzaprine medication and follow up in 2 weeks. Old records from Geisinger hospital were also requested. You were a no show for sick call on the block on 8/31/20 and a no show for sick call on 9/14/2020. You were also seen in sick call on 9/8/20 for complaints of back pain which you previously have pain

medication ordered for. I spoke to RN Chauvel regarding Don Obrien's behavior that day. She said that PA Obrien did not forcefully push your wheelchair into the triage room, nor did he curse at you. She did not witness any incident with your cane. I spoke to Don Obrien regarding his behavior that day. He states he did not forcefully push you in your wheelchair nor did he curse at you. He asked you to transfer to the exam table so he could evaluate you and attempted to retrieve the cane from you while you transferred but you quickly pulled back on the cane and refused to let go of it. You became confrontational started yelling. Security was then called, and you were sent back to your block by security.

Based on the above information your grievance along with your monetary request and request to have Don Obrien fired is denied. Don Obrien did not act unprofessional, indifferent, or negligent. He was attempting to have you transfer to the exam table to assess you and retrieve your cane so you could transfer when you became confrontational. In regard to receiving a proper diagnosis/medical treatment, you were seen by the medical director the following day, Dr. Baddick. He evaluated you, ordered pain medication as well as prednisone taper and cyclobenzaprine medication. He also ordered an MRI test which is being scheduled and he will be following up with you regarding your pain on 9/17/2020.

(Doc. 1-8 at 3-4). Plaintiff's medical care was upheld through Final Review as being "reasonable and appropriate." (Doc. 1-8 at 8).

A further overview of the medical attention he received subsequent to both his falls is set forth in the Initial Review Response to Plaintiff's Grievance No. 900322, and is as follows:

In review of your medical record, I see that you had a nursing triage as you indicate where you did fall from the bunk. I also see that you have been evaluated in sick call multiple times for the

back pain and were seen by nursing triage for the same. Currently, you are on not only Tylenol but also Cymbalta for the discomfort.

In the past you had other pain medications ordered; Muscle rub, Flexeril, Mobic and prednisone. Practitioners are responsible for determining your treatment. It is based off of their evaluation, which they have a valid PA license to practice medication. Medical staff such as the Health Care Administrator and nursing cannot order treatment or medications, nor can we force any practitioner to order something for you.

As I indicated, you had several visits with practitioners, and you've had multiple types of treatments ordered. When you have requested sick call or triage, you have been seen. The physician assistants practice under the license of the medical director. All orders they place are reviewed and approved/not approved by the medical director so not only is their professional opinion licensed but also a licensed medical director reviews and approves of their treatment.

Again, you have been offered several types of medication and are on a newer prescription. It is important to give the new medication ample time to work. You may follow up in sick call with any further concerns. The medical care and treatment you have been receiving are appropriate.

The allegations in your grievance are found to be without merit. The grievance is denied.

(Doc. 1-16 at 9). The Facility Manager upheld this initial review response on

appeal as follows:

I have reviewed your initial grievance, its response, and your subsequent appeal wherein you allege that medical is not helping with chronic pain. You claim that they have only offered you Tylenol and they are indifferent to your suffering.

- 9 -

> The grievance officer addressed your allegations thoroughly and appropriately. Practitioners have ordered you multiple types of medication for pain management. This indicates that they are responsive to your continued reports of ongoing pain. I encourage you to continue to sign up for sick call and work with the practitioners if your pain continues, and I uphold the initial response.

(Doc. 1-16 at 11). Petitioner's appeal to the Secretary's Office of Inmate Grievances and Appeals was denied on Final Review. (Doc. 1-16 at 14).

Additionally, Plaintiff's request for medical accommodations was addressed as follows:

> This is response to grievance #888000. I understand you are questioning the pain medication and the need for a new wheelchair since you do not have a leg rest on the one you received. After reviewing your chart, it is documented that you were given a cane and wheelchair is ordered. If your wheelchair does not have a leg rest, you need to contact Wellpath, who are in charge of distributing medical equipment for leg rests. Not having these is not a reason to obtain a new wheelchair and a leg rest can easily be provided for you. As far as the pain medication you are receiving, it was discussed by the practitioner and the medical director that you are to continue to receive the Mobic you were prescribed until you have received the MRI that is ordered. Due to security reasons, we cannot disclose the date of the scan. Unit the results and recommendations, if any received, are reviewed, you are to continue with what is being given to you. Therefore, this grievance is without merit.

(Doc. 1-13 at 6). This initial grievance response was upheld through Final Appeal, with a finding that a thorough review of Plaintiff's medical record

determined that "the medical care provided was reasonable and appropriate." Id. at 10.

Finally, one of the most recent Initial Review Responses to Plaintiff's challenge to his medical treatment reveals the following:

> I have been assigned as the grievance officer to address your concerns. You state that you filed this grievance under the violation of the 8th and 14th Amendment because you feel you are not being provided adequate medical care for your serious injury and deliberate indifference to your serious medical needs. You state that you are being given the same ineffective medication and are suffering severe pain, duress, mental stress, mental anguish, etc., which amounts to cruel and unusual punishment. You state that you saw PA Williams and also spoke with Dr. Bora and Dr. Baddick and this grievance officer regarding the ineffective medication, and nobody has been able to do anything for your pain. You state that you informed PA Williams that your pain med was going to run out on 9/24/21 and she said she would take care of it. You state that you were without pain meds all weekend until you saw Dr. Bora on 9/27/21 when you explained that these meds were ineffective. You are seeking as relief $500,000 for not provided adequate medical care for your serious injury and the deliberate indifference to your medical needs.
>
> Dr. Baddick and this grievance officer met with you on 10/8/21 on MD line to address your concerns regarding pain management and review your medical record as far as medications and previous and upcoming consults. Based upon that meeting and the review of documentation in your medical record, you had been tried on multiple medications for pain to which you stated none of them really provided adequate relief, if any relief. You were referred to a neurosurgery for evaluation due to a CT scan that indicated evidence that your greenfield filter that was in your inferior vena cava was fractured and embedded into your lumbar spine. You were seen by

- 11 -

neurology on 7/15/21 for evaluation of lower extremity weakness/numbness related to a fall in 2/2019 from the top bunk of your bed. There was no further diagnostic work-up recommended at this time per their documentation. You do have upcoming pending consults for pain management for a peripheral nerve block scheduled in the near future due to not being able to manage our pain with oral medications and a neurosurgery consult with a date pending for a 2nd opinion. You will also be seen for follow up on MD line with Dr. Baddick. I spoke with PA Williams regarding your visit with her on 9/23/21 and your medication expiring, and she indicated that you informed her that you did not want it reordered because it was not working. When seen by Dr. Bora on 9/27/21, she did order you prednisone, in addition to reordering the Robaxin.

Based upon the above, your grievance is upheld in apart and denied in part. Your request for all monetary compensation is DENIED.

(Doc. 35 at 19).

## III. MOTION TO DISMISS

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)(quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P.

8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal." Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir. 2009) (per curiam).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief"." Id. at 211 (quoted case omitted).

## IV. Discussion

### A. Eighth Amendment Conditions of Confinements of Confinement

The Eight Amendment protects prisoners from the infliction of cruel and unusual punishment. U.S. Const. amend. VIII. To prevail on any Eighth Amendment claim, an inmate must show: (1) a deprivation that is objectively, "sufficiently serious;" and (2) "a sufficiently culpable state of mind" of the defendant official. Farmer v. Brennan, 511 U.S. 825, 834 (1994). A prison official acts with deliberate indifference to an inmate's serious medical need when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and must also draw the inference." Farmer, 511 U.S. at 837. Claims involving failure to assign a proper bunk to accommodate an inmate's medical needs are considered conditions of confinement claims pursuant to the Eighth Amendment's prohibition on cruel and unusual punishment. See Glazewski v. Corzine, 385 F. App'x 83, 89 (3d Cir. 2010) (treating allegations of being given a top bunk as part of a conditions of confinement claim); Little v. Ebbert, No. 1:17-CV-01915, 2018 WL 6504201, at *4 (M.D. Pa. Dec. 11, 2018)

- 14 -

To succeed on an Eighth Amendment conditions of confinement claim, a plaintiff must demonstrate both an objective element – that the deprivation was sufficiently serious, and a subjective element – that the prison officials acted with a sufficiently culpable mind. Wilson v. Seiter, 501 U.S. 294 (1991). Prison conditions may objectively violate the Eighth Amendment proscription against cruel and unusual punishment when inmates are deprived of "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Such necessities include food, clothing, shelter, medical care, and reasonable safety. Tillman v. Lebanon Cnty. Corr. Facility, 221 F.3d 410, 418 (3d Cir. 2000). "Whether one characterizes the treatment received by [the prisoner] as inhumane conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the 'deliberate indifference' standard articulated in Estelle." Wilson at 303.

"Deliberate indifference" in this context is a subjective standard: "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001). It is not sufficient that the official should have known of the risk. Id. at 133. A plaintiff can, however, prove an official's actual knowledge of a substantial risk to his safety "in the usual ways, including

inference from circumstantial evidence." Farmer, 511 U.S. at 842. In other words, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id.

Furthermore, federal law provides that:

No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act.

42 U.S.C. §1997e(e). The Third Circuit has analyzed the physical injury requirement in §1997e(e) to require more than a *de minimis* physical injury. Mitchell v. Horn, 318 F.3d 523, 535 (3d Cir. 2003).

Other Courts in this District have found that a plaintiff stated an Eighth Amendment claim based on deliberate indifference when he alleged that he was injured from falling off the top bunk bed, due to the defendants failing to issue him a bottom bunk pass, despite his repeated requests and the fact that he had documented medical needs in his file. See Little v. Ebbert, No. 1:17-CV-01915, 2018 WL 6504201, at *7 (M.D. Pa. Dec. 11, 2018). Refusal to honor bottom bunk and floor passes can be interpreted as deliberate indifference to the need for medical treatment prescribed by prison authorities. Hemingway v. Gosa, No. 1:19-CV-583, 2019 WL 3857856, at *7 (M.D. Pa. Aug. 16, 2019); see also Nichols v. Byrne, No. 15-CV-00527, 2016

- 16 -

WL 4921008, at *4 (E.D. Pa. Sept. 14, 2016). "... [N]egligently failing to assign a prisoner to a bottom bunk does not meet the subjective prong for a deliberate indifference claim.' " Id. at *4. However, facts that show a defendant's knowledge of the plaintiff's medical need for a bottom bunk constitutes more than negligence. See Id.

At this juncture, Plaintiff alleges sufficient facts to state a plausible Eighth Amendment claims against Defendants. Hernandez claims that he "was prescribed with medical orders to be housed on a bottom bunk only, due to having an I.V.C. Filter in his Vena Cava Vein." (Doc. 1, 37). Predictably, Hernandez fell, seriously injuring himself. See Cameron v. Swartz, 2020 WL 7496317, at *6 (explaining in the context of bottom bunk beds that where a plaintiff has a documented medical need and made repeated requests for a bottom bunk, the refusal to provide him with one can be construed as deliberate indifference where the plaintiff was injured as a result of same). Neither the Medical nor Corrections Defendants address whether Plaintiff had a medical need for a lower bunk and if that need was honored. Thus, both Defendants' motions to dismiss will be denied as to Plaintiff's Eighth Amendment conditions of confinement claim.

## B. Eighth Amendment Medical Claim

In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). See also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).  In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id.

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state

a valid claim of medical mistreatment under the Eighth Amendment ..."
Estelle v. Gamble, 429 U.S. 97, 106 (1976). For instance, a "medical decision
not to order an X-ray, or like measures, does not represent cruel and unusual
punishment. At most it is medical malpractice." Id., 429 U.S. at 107. "[A]s
long as a physician exercises professional judgment his behavior will not
violate a prisoner's constitutional rights." Brown v. Borough of
Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). Further, a doctor's
disagreement with the professional judgment of another doctor is not
actionable under the Eighth Amendment. See White v. Napoleon, 897 F.2d
103, 110 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment,
or medical malpractice does not give rise to a §1983 cause of action, and an
inmate's disagreement with medical treatment is insufficient to establish
deliberate indifference. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir.
1993).

Further, a prison administrator cannot be found deliberately indifferent
under the Eighth Amendment because he or she fails to respond to the
medical complaints of an inmate being treated by a prison physician, or
because, as non-physicians, they defer to the medical judgment of the
inmate's treating physicians. Id., 991 F.2d at 69. If, however, non-medical
prison personnel had "a reason to believe (or actual knowledge) that prison

doctors or their assistants are mistreating (or not treating) a prisoner," liability may be imposed. Spruill, 372 F.3d 236.

A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). See McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976).

Additionally, if there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician. Little v. Lycoming County, 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996). The key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires. Farmer v. Carlson, 685 F. Supp. at 1339.

Here, Plaintiff's voluminous documentation demonstrates that Plaintiff received substantial medical attention, and that the attention Plaintiff received lacks that requisite deliberate indifference to support a Section 1983 claim. Specifically, Plaintiff was immediately evaluated and treated after both falls. Additionally, Plaintiff was evaluated by outside specialists, prescribed CT scans, MRIs, various pain medications, pain therapy, a

wheelchair, and a cane. There is no indication, whatsoever, that at any time medical treatment was denied or intentionally withheld. Plaintiff own exhibits establish that at all times, Plaintiff was thoroughly examined and immediately recommended for testing or medication based on his symptoms.

At best, Plaintiff's allegations demonstrate Plaintiff's disagreement with the type of treatment rendered. However, his mere disagreement with the course of action that the medical department took based on the symptoms he presented, is not enough to state a §1983 claim. Sample v. Diecks, 885 F.2d 1099, 1109 (3d Cir. 1989) (citing Estelle, 429 U.S. at 105–06 (in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind) ). This is particularly so in light of the fact that there are no facts of record that demonstrate that any named Defendant intentionally withheld medical treatment from Plaintiff in order to inflict pain or harm upon Plaintiff. Farmer, 511 U.S. at 837*;* Rouse, 12 F.3d at 197. Thus, the allegations in the Plaintiff's complaint amount to nothing more than Plaintiff's subjective disagreement with the treatment decisions and medical judgment of the medical staff at the prison. Where, as here, an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist.

Nottingham v. Peoria, 709 F. Supp. 542, 547 (M.D. Pa. 1988). At most, the allegations in the complaint only rise to the level of mere negligence. As simple negligence cannot serve as a predicate to liability under §1983, Hudson v. Palmer, 468 U.S. 517 (1984), Plaintiff's civil rights complaint fails to articulate an arguable claim against any of the named Defendants. See White, 897 F.2d at 108-110. As such, both the Medical and Corrections Defendants' motion to dismiss Plaintiff's Eighth Amendment medical deliberate indifference claim will be granted.

### C. ADA Claim

Title II of the Americans With Disabilities Act ("ADA") provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132, As used in Title II of the ADA, "public entity" is defined as: "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 103(8) of the Rail Passenger Service Act [49 U.S.C.S. § 24102(4)])." 42 U.S.C. §12131(a). State prisons fall squarely within the statutory definition of "public entity" in

Title II of the ADA. Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206, 210 (1998). However, the plain language of §12132 applies only to public entities not individuals. Yeskey v. Commonwealth, 76 F.Supp.2d 572, 575 (M.D. Pa. 1999) (holding that individuals are not liable under Title II because it prohibits discrimination in programs of a "public entity" or discrimination "by any such entity" and "public entity" is not defined in Title II to include individuals). None of the moving defendants qualify as a public entity. Therefore, the ADA is inapplicable, and this claim will be dismissed.

### D. **State Law Claims**

Defendants assert that the Court should decline to exercise supplemental jurisdiction over any state law claims raised by Plaintiffs. (Doc. 32 at 15.) When a district court has dismissed claims over which it had original jurisdiction, the Court may decline to exercise supplemental jurisdiction over the pendent state law claims. See 28 U.S.C. §1367(c)(3). The Court's decision regarding the exercise of supplemental jurisdiction is one that should be based on "the values of judicial economy, convenience, fairness, and comity." See Carnegie Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). Ordinarily, when all federal claims have been dismissed and only state law claims remain, the balance of these factors indicates that the remaining claims properly belong in state court. See id. In the absence of a

viable federal claim and finding nothing to distinguish this matter from the ordinary case, the Court finds that the balance of factors in this case "point[s] toward declining to exercise jurisdiction over the remaining state law claims." See id. at 350 n.7. Accordingly, the Court having dismissed Plaintiff's medical indifference claim, will dismiss Plaintiff's state law claims of profession negligence against Defendants pursuant to 28 U.S.C. §1367(c)(3).

## VI. CONCLUSION

For the reasons set forth above, the Court will grant Defendants' motions to dismiss on all claims except for Plaintiff's Eighth Amendment conditions of confinement claim.

A separate Order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated:  March 24, 2023**
21-1570-01

- 24 -