**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **EUGENIO ANDINO-HERNANDEZ,** | **:** |
| **Plaintiff** | **:**  **CIV. ACTION NO. 3:21-CV-1570** |
| **v.** | **:**  **(JUDGE MANNION)** |
| **MS. MASON,** *et al.*, | **:** |
| **Defendants** | **:** |

**<u>MEMORANDUM</u>**

Presently before the court in this prisoner civil rights case are plaintiff's motion to compel discovery and defendant's motions for summary judgment. For the reasons set forth below, the motion to compel discovery will be denied, the motions for summary judgment will be granted in-part, all defendants other than Torres, Martin, Gavala, Derr, and Matrey will be granted summary judgment and terminated from this case, and the court will grant the remaining defendants leave to file a second motion for summary judgment with respect to plaintiff's Eighth Amendment claim arising from his fall on February 24, 2020.

**I.   BACKGROUND**

Plaintiff, Eugenio Andino-Hernandez, an inmate in Mahanoy State Correctional Institution ("SCI-Mahanoy") who was incarcerated in that prison

during the events at issue in this case, brings the instant case pursuant to 42 U.S.C. §1983. (Doc. 1). Andino-Hernandez alleges Eighth Amendment, Fourteenth Amendment, and ADA violations from two separate incidents that occurred at SCI-Mahanoy. (*Id.*) Specifically, Andino-Hernandez claims that on October 19, 2019, he was moved to Cell #2 in the restricted housing unit ("RHU") at SCI-Mahanoy. (*Id.* at 8). He alleges that, although he had "bottom bunk status" due to having an I.V.C. Filter in his Vena Cava Vein, he was instructed to enter the cell with another inmate who already occupied the bottom bunk. (*Id.* at 8-9). Shortly thereafter, Andino-Hernandez fell while dismounting the top bunk. (*Id.*) He claims the nurse and staff failed to provide immediate medical treatment following his fall. (*Id.*)

Several months later, on February 24, 2020, Andino-Hernandez alleges he was forced to use a non-handicap shower over his objections and fell, hitting his lower back on the shower step. (*Id.* at 18). Andino-Hernandez files the instant action seeking compensatory and punitive damages for "the injuries sustained and suffered" as a result of defendants' "medical indifference and negligence, in violation of Eighth Amendment, Americans with Disabilities Act and Medical Professionalism." (*Id.* at 25).

On March 24, 2023, the court granted in part and denied in part defendants' motions to dismiss, dismissing the complaint to the extent that it

asserted claims for deliberate indifference to a serious medical need, violation of the ADA, or violation of state law, but allowing Andino-Hernandez's Eighth Amendment conditions of confinement claim to proceed. (Docs. 38-39). Defendants Correct Care Solutions, Wellpath LLC, Williams, O'Brien, Baddick, and Bora ("medical defendants") answered the complaint on April 13, 2023. (Doc. 40). Defendants Mason, White, Stetler, Steinhart, Brown, Beury, Matrey, Burger, Torres, Derr, Taylor, Gavala, Martin, Hauser, Jankowski, Krill, Long, and Ramer ("corrections defendants") answered the complaint on April 28, 2023. (Doc. 41).

Andino-Hernandez filed a motion to compel discovery on February 6, 2024. (Doc. 62). The corrections defendants filed a motion for summary judgment on February 27, 2024, arguing that they are entitled to summary judgment because Andino-Hernandez failed to exhaust administrative remedies with respect to his claim arising from his fall from a top bunk. (Docs. 66-67). The corrections defendants additionally argue that defendants Nurse Alicia, Rammer, Hauser, Matrey, Steinhart, White, Taylor, Stetler, Nurse Jackie, Nurse Tina, and Mason are entitled to summary judgment because they were not personally involved in Andino-Hernandez's remaining claims. (*Id.*)  The medical defendants then moved for summary judgment on March 28, 2024. (Docs. 71, 73).

Andino-Hernandez filed a brief responding to the motions for summary judgment on May 10, 2024. (Doc. 78). Andino-Hernandez concedes that summary judgment is appropriate as to Hauser, Matrey, Jackie, Tina, Stetler, Mason, Taylor, White, Alicia, Ramer, Steinhart, Rodgers, Baddick, O'Brien, Bora, and Williams, but he opposes the corrections defendants' motion to the extent that it seeks summary judgment for his purported failure to exhaust administrative remedies. (*Id.*) Defendants filed reply briefs on May 23, 2024, and May 24, 2024, making the motions ripe for review. (Docs. 79-80).

## II.   MOTION TO COMPEL DISCOVERY

The court will first consider Andino-Hernandez's motion to compel discovery. Andino-Hernandez seeks to compel defendants to produce copies of his medical records and any incident reports that were authored by Pennsylvania Department of Corrections ("DOC") staff following the incidents that give rise to his claims. (Doc. 62).[1]  Andino-Hernandez notes that when he initially requested his medical records from the defendants, they responded that the records could be obtained directly from the DOC's

---

[1] Andino-Hernandez has not filed a brief in support of the motion as required by Local Rule 7.5. Although this would ordinarily be cause to deem the motion withdrawn, *see* M.D. Pa. L.R. 7.5, the court will consider the motion to compel discovery on its merits in light of Andino-Hernandez's *pro se* status and the fact that the corrections defendants have responded to the merits of the motion. (*See* Doc. 63).

medical department. (*Id.*) Andino-Hernandez acknowledges that he could make such a request to the medical department, but he represents that the department will charge a $20 retrieval fee plus $1.00 for every page of the records. (*Id.*) Andino-Hernandez states he cannot afford such charges. (*Id.*)

The corrections defendants oppose the motion, noting that DOC policy allows Andino-Hernandez to obtain his medical records directly from the DOC and that he can contact the outside hospital directly for any medical records that are not in the DOC's possession. (Doc. 63). As for Andino-Hernandez's request for incident reports, defendants note that no such reports were authored with the exception of "accident reports" that would be contained within his medical records. (*Id.*) Andino-Hernandez has not responded to these contentions through a reply brief or any other document.

The court will deny the motion to compel discovery to the extent that it seeks to compel production of any incident reports related to the underlying incidents. The corrections defendants represent that no such evidence exists, and Andino-Hernandez has not rebutted this contention. The court "cannot compel the production of things that do not exist. Nor can the court compel the creation of evidence by parties who attest that they do not possess the materials sought by an adversary in litigation." *Tech v. United States*, 284 F.R.D. 192, 198 (M.D. Pa. 2012).

The court will also deny the motion to compel discovery, with respect to Andino-Hernandez's medical records. Indigent civil litigants generally must bear their own litigation costs. While a district court may, as part of its inherent equitable power to manage discovery, order defendants to provide copies to plaintiff of documents that are already in their possession under certain circumstances. The court sees no reason to deviate from the normal requirements that a plaintiff, including *pro se* plaintiffs, must fund their own litigation and it is not the government's burden to fund *pro se* litigation. *Cf. Tabron v. Grace*, 6 F.3d 147, 159 (3d Cir. 1993)

Because it does not appear that any of this discovery would be necessary to resolve the instant motions for summary judgment, however, the court will proceed to consideration of those motions.

### III.   ALL DEFENDANTS WHO PROVIDED MEDICAL CARE TO ANDINO-HERNANDEZ WILL BE GRANTED SUMMARY JUDGMENT

At the outset, the court will grant summary judgment to defendants Hauser, Matrey, Jackie, Tina, Stetler, Mason, Taylor, White, Alicia, Ramer, Steinhart, Rodgers, Baddick, O'Brien, Bora, and Williams,[2] because Andino-Hernandez concedes that summary judgment is appropriate against these defendants for lack of personal involvement. (Doc. 78 at 8).

---

[2] This defendant is identified by her first name in Andino-Hernandez's brief as "Jenna." (*See* Doc. 78 at 8).

The court additionally finds that summary judgment is appropriate with respect to defendants Correct Care Solutions and Wellpath LLC because Andino-Hernandez has not alleged that either company maintained a policy or custom that caused the alleged violations of his civil rights. *See Palakovic v. Wetzel*, 854 F.3d 209, 232 (3d Cir. 2017) ("To state a claim against a private corporation providing medical services under contract with a state prison system, a plaintiff must allege a policy or custom that resulted in the alleged constitutional violations at issue." (citing *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003))).

Considering these conclusions, the medical defendants' motion for summary judgment will be granted in its entirety, as will the portion of the corrections defendants' motion seeking summary judgment for lack of personal involvement. The court's analysis will therefore only address the corrections defendants' argument that summary judgment on Andino-Hernandez's conditions of confinement claim is warranted for failure to exhaust administrative remedies. The below material facts section will accordingly only address facts that are pertinent to the exhaustion issue.

## IV.   FACTS REGARDING EXHAUSTION[3]

Exhaustion of administrative remedies in the DOC is governed by the three-step process outlined in the DOC's grievance policy, DC-ADM 804. (*See* Doc. 67-1 at 7-41). Under DC-ADM 804, a prisoner must first submit a written grievance within fifteen working days from the date of the incident. *Id.* §1(A)(8). DC-ADM 804 provides that the grievance must include "a statement of the facts relevant to the claim," "identify individuals directly involved in the events," and "specifically state any claims [the inmate] wishes to make concerning violations of Department directives, regulations, court orders, or other law." *Id.* §1(A)(11). Next, the prisoner must submit a written appeal to an intermediate review level within fifteen working days. *Id.*

---

[3] As required by Local Rule 56.1, defendants have filed statements of material facts. (Docs. 68, 72). Rule 56.1 also requires that the party opposing a motion for summary judgment file a statement responding to the numbered paragraphs in the movant's statement of material facts, which "shall include references to the parts of the record" that supports the nonmovant's opposition to the motion. L.R. 56.1. Andino-Hernandez has not filed a response to defendants' statements as required by Rule 56.1, but he has cited record evidence which he contends establishes genuine issues of material fact. Although Andino-Hernandez's failure to respond to defendants' statements would ordinarily lead to the factual contentions in the defendants' statements being deemed admitted, *see* L.R. 56.1, the court will consider the evidence he has produced and determine whether it creates a genuine issue of material fact in light of his *pro se* status. Where defendants have asserted a fact in their statement and Andino-Hernandez has not produced any evidence that would rebut that fact, the court will cite directly to defendants' statement of material facts.

§2(A)(1)(a). Finally, the inmate must submit an appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") within fifteen working days. *Id.* §2(B)(1)(b).

Andino-Hernandez filed five grievances between October 19, 2019, and December 31, 2019. (Doc. 68 ¶ 5). It is undisputed that Andino-Hernandez failed to exhaust four of the five grievances by properly appealing the grievances through all stages of administrative review. (*See* Doc. 68 ¶¶ 7-10).

The only grievance for which the parties dispute the relevant facts is grievance number 831781. Andino-Hernandez filed that grievance on October 28, 2019, complaining about, *inter alia*, defendants' alleged deliberate indifference that caused his fall on October 19, 2019. (*See* Doc. 67-1 at 43-44). On October 30, 2019, SCI-Mahanoy's facility grievance coordinator rejected the grievance for failure to comply with DC-ADM 804, noting that "[g]rievances based upon different events must be presented separately" and that grievance number 831781 grieved several issues, including Andino-Hernandez's "bottom bunk status, housing, officer responses, healthcare, medical practice, etc." (*Id.* at 45).

Andino-Hernandez appealed the rejection to the facility manager on November 1, 2019. (Doc. 68 ¶ 6; Doc. 67-1 at 46). The facility manager

rejected the appeal on procedural grounds on November 19, 2019, upholding the facility grievance coordinator's decision to reject the initial grievance for failure to grieve separate issues in separate grievances. (*See* Doc. 67-1 at 47).

Defendants contend that upon receiving the rejection from the facility manager, Andino-Hernandez did not file a final appeal to SOIGA. (Doc. 68 ¶ 6). Andino-Hernandez disputes this contention, asserting that he did file an appeal to SOIGA, but that SOIGA never responded to the appeal. (*Id.* at 5). Andino-Hernandez has filed several documents to support this contention, including (1) the appeal he purportedly filed to SOIGA; (2) a follow-up letter he purportedly sent to SOIGA on January 8, 2020, inquiring why he had not received a response from SOIGA; (3) a second follow-up letter he purportedly sent to SOIGA on February 11, 2020, inquiring why he had not received a response; and (4) a cash slip that purports to deduct the cost of postage to mail the appeal to SOIGA from Andino-Hernandez's prisoner trust account. (*See* Docs. 78-1, 78-2, 78-3, 78-4).

Corrections defendants assert that the evidence Andino-Hernandez has filed to support his contention that he appealed to SOIGA is "highly suspect, for several reasons." (Doc. 80 at 10). Corrections defendants first note that SOIGA has no record of ever receiving Andino-Hernandez's appeal

or either one of his letters or of any responses SOIGA sent to these documents. (*Id.*) Second, corrections defendants note that Andino-Hernandez "has filed literally hundreds of grievances and appeals on the docket" of this case, but that he "curiously" did not file the relevant appeal to SOIGA on the docket until he opposed the motion for summary judgment. (*Id.* at 10 n.2). Third, corrections defendants note that although the cash slip that purportedly shows payment of postage for the appeal to SOIGA indicates that Andino-Hernandez was charged $0.78 for the postage on November 25, 2019, prison financial records do not indicate that such an amount was deducted from Andino-Hernandez's account on that date or any other time shortly thereafter. (*Id.* at 11). Finally, corrections defendants note that although the purported appeal to SOIGA and the cash slip indicate that Andino-Hernandez was housed in cell EB 27 at SCI-Mahanoy on November 23, 2019, his prison housing records state that he was actually housed in Lehigh County Correctional Facility on November 23, 2019, and that he was not returned to SCI-Mahanoy until December 3, 2019. (*Id.*)

## V.   STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the case under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Aetna Cas. & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). The court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge that burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could

find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23; *Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

## VI. DISCUSSION

As discussed above, the sole remaining issue for which the court must address the merits of the pending summary judgment motions is corrections defendants' argument that Andino-Hernandez failed to exhaust administrative remedies with respect to his Eighth Amendment conditions of confinement claim. The court's discussion is further narrowed to the specific issue of whether Andino-Hernandez exhausted administrative remedies with

respect to grievance number 831781 because Andino-Hernandez has not disputed defendants' contention that he failed to properly appeal the other four grievances he filed between October 19, 2019, and December 31, 2019, through all stages of administrative review. (*See* Doc. 68 ¶¶ 5-10). With the discussion appropriately cabined, the court turns its attention to the remaining issue of whether Andino-Hernandez exhausted administrative remedies with respect to grievance number 831781.

Under the Prison Litigation Reform Act ("PLRA"), prisoners complaining about the conditions of their confinement must exhaust available administrative remedies before they may file suit in federal court. 42 U.S.C. §1997e(a). The PLRA requires proper exhaustion, meaning plaintiffs must administratively grieve their claims in accordance with the procedural rules of the prison in which they are incarcerated. *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). Failure to exhaust administrative remedies is an affirmative defense that defendants must plead and prove; it is not a pleading requirement for plaintiffs. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

A prisoner is only required to exhaust administrative remedies that are "available." *Rinaldi v. United States*, 904 F.3d 257, 268 (2018) (citing *Woodford*, 548 U.S. at 93). An administrative remedy is unavailable, and

administrative exhaustion is thus excused, in three situations: "(1) when 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when it is 'so opaque that it becomes, practically speaking, incapable of use,' such as when no ordinary prisoner can discern or navigate it; or (3) when 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Id.* at 266-67 (quoting *Ross v. Blake*, 578 U.S. 632, 643-44 (2016)). If defendants establish failure to exhaust administrative remedies, the burden shifts to the plaintiff to show that the administrative remedy process was unavailable. *Id.* at 268.

Corrections defendants concede that grievance number 831781 pertains to Andino-Hernandez's October 19, 2019 fall, but they argue that the grievance was not fully exhausted because Andino-Hernandez did not appeal the grievance to SOIGA. (Doc. 67 at 8).

In response, Andino-Hernandez advances several arguments as to how the grievance process was purportedly unavailable to him. First, he asserts that he attempted to file an appeal to SOIGA but never received a response, which made the process unavailable. (*Id.*) Second, he argues that the course of proceedings when this case was referred to mediation from December 2023 to January 2024 provides another "example of the lengths

15

that the Commonwealth employees have gone to, to ensure that Mr. Hernandez receives no assistance in this litigation." (*Id.* at 6-7). Third, he argues that the grievance process is a "dead-end," and thus unavailable, because DOC policy requires an inmate to request damages in his grievance before he may seek damages in court, but the grievance officers who answer the grievances are not themselves empowered to award damages. (*Id.* at 7-8 (quoting *Ross*, 578 U.S. at 643-44)). Finally, he argues that the grievance process is unavailable because prison officials are "'consistently unable to or unwilling to provide any requested relief,'" because the superintendent of SCI-Mahanoy simply "rubber-stamp[s]" the denial of grievances in the prison. (*Id.* at 8 (quoting *Ross*, 578 U.S. at 643-44)). Andino Hernandez cites five examples of grievances that were denied to support this argument. (*Id.*)

Corrections defendants reply that the evidence Andino-Hernandez has filed to establish that he appealed to SOIGA is "suspect" for the reasons outlined above. (Doc. 3, 10-11). Corrections defendants additionally argue that, regardless of whether the evidence shows that Andino-Hernandez appealed to SOIGA, the evidence is irrelevant because (1) he failed to properly respond to corrections defendants' statement of material facts and their factual assertion that he never appealed to SOIGA is therefore deemed admitted under Local Rule 56.1; and (2) even if he did appeal to SOIGA, he

16

did not do so properly because his grievance was rejected on procedural grounds at earlier stages of the grievance process. (*Id.* at 3-4). Corrections defendants further argue that Andino-Hernandez's other unavailability arguments are meritless. (*Id.* at 5-8).

Having reviewed the parties' arguments and the record of this case, the court finds that there is a genuine issue of fact as to whether Andino-Hernandez appealed grievance number 831781 to SOIGA. The corrections defendants have filed record evidence to establish that Andino-Hernandez did not appeal to SOIGA; Andino-Hernandez has filed record evidence to establish the opposite. (*See* Doc. 67-1 at 43-47; Doc. 78-1; Doc. 78-2; Doc. 78-3; Doc. 78-4). Although corrections defendants have produced evidence to show that Andino-Hernandez's proffered evidence is "highly suspect," (*see* Doc. 80 at 10-11), the court cannot reach this conclusion at this stage of litigation. *See, e.g.*, *Marino*, 358 F.3d at 247 (noting that a court considering a motion for summary judgment may not weigh the evidence or make credibility determinations).

This genuine issue of fact, however, is not material to the ultimate issue of whether Andino-Hernandez exhausted administrative remedies. *See Anderson*, 477 U.S. at 248 (noting that a factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will

affect the outcome of the case under governing substantive law). Andino-Hernandez contends that he appealed his grievance to SOIGA, but regardless of whether this happened, the grievance was already procedurally defaulted when SCI-Mahanoy's facility grievance coordinator and facility manager rejected the grievance and first-level appeal for failure to comply with DC-ADM 804. (Doc. 67-1 at 45-47); *see also Downey*, 968 F.3d at 305 ("The PLRA requires proper exhaustion, meaning 'complet[ing] the administrative review process in accordance with the applicable procedural rules.'" (quoting *Woodford*, 548 U.S. at 88)); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 463 (M.D. Pa. 2010) ("Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim." (quoting *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004))). Put another way: even if it is true, as Andino-Hernandez contends, that SOIGA did not respond to his appeal, SOIGA only had the opportunity to fail to comply with the DOC's grievance process because Andino-Hernandez first failed to comply with the DOC's grievance process. Thus, because Andino-Hernandez procedurally defaulted grievance number 831781 by failing to comply with DOC policy at earlier stages of administrative review, SOIGA's purported failure to respond to his appeal is immaterial.

Andino-Hernandez's remaining unavailability arguments similarly do not show the existence of a genuine issue of material fact. First, the course of proceedings during mediation in this case in 2023 and 2024 is plainly irrelevant to the question of whether administrative remedies were available to Andino-Hernandez in 2019.

Second, as defendants correctly note, (*see* Doc. 80 at 6), his argument regarding money damages has been squarely rejected by the Supreme Court. *See Booth v. Churner*, 532 U.S. 731, 733 (2001) ("The question is whether an inmate seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money. We hold that he must.").

Finally, Andino-Hernandez's argument that the grievance process was unavailable because the superintendent of SCI-Mahanoy simply "rubber-stamp[s]" the denial of grievances is pure speculation that is not sufficient to create a genuine issue of material fact. To the extent that any response is needed to rebut such an undeveloped argument, defendants have cited instances where other inmates, and Andino-Hernandez himself, have obtained relief through the DOC's grievance process. (*See* Doc. 80 at 8 (collecting cases); Doc. 80-2).

19

In sum, there is no genuine issue of material fact on the issue of exhaustion because even if SOIGA failed to respond to Andino-Hernandez's appeal of grievance number 831781, the record shows that the grievance was procedurally defaulted at earlier stages of the administrative process. There is also no genuine issue of material fact as to whether the grievance process was available to Andino-Hernandez. The court will accordingly grant summary judgment to all remaining defendants on Andino-Hernandez's claims arising from his October 19, 2019 fall.

## VII. CONDITIONS OF CONFINEMENT CLAIM ARISING FROM FEBRUARY 24, 2020 FALL

Although the court has concluded that summary judgment is warranted with respect to all of the arguments defendants have asserted, corrections defendants' motion does not advance any arguments for summary judgment for the Eighth Amendment claim arising from Andino-Hernandez's February 24, 2020 fall, apparently based on the erroneous belief that the court dismissed such a claim in its March 24, 2023 memorandum and order addressing defendants' motions to dismiss.[4] (*See* Doc. 67 at 5).

---

[4] Because Andino-Hernandez concedes that summary judgment is appropriate for all medical defendants, it is immaterial whether medical defendants' motion for summary judgment has advanced any arguments on this claim.

To the contrary its March 24, 2023 memorandum and order solely addressed facts of defendants allegedly placing Andino-Hernandez in a top bunk and stat[ed] that the motions to dismiss were granted "on all claims except for Plaintiff's eighth Amendment conditions of confinement claim". There is no analysis of Andino-Hernandez's claims arising from the February 24, 2020 fall in the March 24, 2023 memorandum, nor is there any legal basis cited to dismiss those claims.

Finally, because it appears the defendants were operating under a good faith belief that the court previously dismissed all claims arising from the February 24, 2020 fall and moreover that it appears that there may have been confusion of what was originally challenged and briefed in the earlier motion to dismiss, in the interest of justice the defendants Torres, Martin, Gavala, Derr, and Matrey may file a second motion for summary judgment with respect to this claim. A schedule for such a motion shall be included in the accompanying order.

## VIII.  CONCLUSION

For the foregoing reasons, the court will deny plaintiff's motion to compel discovery, grant defendants' motions for summary judgment, terminate all defendants other than Torres, Martin, Gavala, Derr, and Matrey

from the docket of this case, and grant Torres, Martin, Gavala, Derr, and Matrey leave to file a second motion for summary judgment with respect to plaintiff's remaining Eighth Amendment claim. An appropriate order shall issue.

*s/ Malachy E. Mannion*
**Malachy E. Mannion**
**United States District Judge**

**Dated: September 30, 2024**
21-1570-02

22