## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

EUGENIO ANDINO-HERNANDEZ,    :

          **Plaintiff**      :   **CIV. ACTION NO. 3:21-CV-1570**

          **v.**        :      **(JUDGE MANNION)**

MS. MASON, *et al.*,    :

          **Defendants**   :

### <u>MEMORANDUM</u>

Presently before the court in this prisoner civil rights case is defendants', Torres, Martin, Gavala, Derr, and Matrey, second motion for summary judgment. For the reasons set forth below, the motion for summary judgment will be granted and the matter terminated.

## I.  BACKGROUND

Plaintiff, Eugenio Andino-Hernandez, an inmate in Mahanoy State Correctional Institution ("SCI-Mahanoy"), who was incarcerated in that prison during the events at issue in this case, brings the instant case pursuant to 42 U.S.C. §1983. (Doc. 1). Andino-Hernandez alleges Eighth Amendment, Fourteenth Amendment, and ADA violations from two separate incidents that occurred at SCI-Mahanoy. (*Id.*) Specifically, Andino-Hernandez claims that on October 19, 2019, he was moved to Cell #2 in the restricted housing unit

("RHU") at SCI-Mahanoy. (*Id.* at 8). He alleges that, although he had "bottom bunk status" due to having an I.V.C. Filter in his Vena Cava Vein, he was instructed to enter the cell with another inmate who already occupied the bottom bunk. (*Id.* at 8-9). Shortly thereafter, Andino-Hernandez fell while dismounting the top bunk. (*Id.*) He claims the nurse and staff failed to provide immediate medical treatment following his fall. (*Id.*)

Several months later, on February 24, 2020, Andino-Hernandez alleges he was forced to use a non-handicap shower over his objections and fell, hitting his lower back on the shower step. (*Id.* at 18). Andino-Hernandez files the instant action seeking compensatory and punitive damages for "the injuries sustained and suffered" as a result of defendants' "medical indifference and negligence, in violation of Eighth Amendment, Americans with Disabilities Act and Medical Professionalism." (*Id.* at 25).

On March 24, 2023, the court granted in part and denied in part defendants' motions to dismiss, dismissing the complaint to the extent that it asserted claims for deliberate indifference to a serious medical need, violation of the ADA, or violation of state law, but allowing Andino-Hernandez's Eighth Amendment conditions of confinement claim to proceed. (Docs. 38-39). Defendants Correct Care Solutions, Wellpath LLC, Williams, O'Brien, Baddick, and Bora ("medical defendants") answered the complaint

2

on April 13, 2023. (Doc. 40). Defendants Mason, White, Stetler, Steinhart, Brown, Beury, Matrey, Burger, Torres, Derr, Taylor, Gavala, Martin, Hauser, Jankowski, Krill, Long, and Ramer ("corrections defendants") answered the complaint on April 28, 2023. (Doc. 41).

Andino-Hernandez filed a motion to compel discovery on February 6, 2024. (Doc. 62). The corrections defendants filed a motion for summary judgment on February 27, 2024, arguing that they are entitled to summary judgment because Andino-Hernandez failed to exhaust administrative remedies with respect to his claim arising from his fall from a top bunk. (Docs. 66-67). The corrections defendants additionally argued that defendants Nurse Alicia, Rammer, Hauser, Matrey, Steinhart, White, Taylor, Stetler, Nurse Jackie, Nurse Tina, and Mason are entitled to summary judgment because they were not personally involved in Andino-Hernandez's remaining claims. (*Id.*) The medical defendants then moved for summary judgment on March 28, 2024. (Docs. 71, 73).

Andino-Hernandez filed a brief responding to the motions for summary judgment on May 10, 2024. (Doc. 78). Andino-Hernandez conceded that summary judgment is appropriate as to Hauser, Matrey, Jackie, Tina, Stetler, Mason, Taylor, White, Alicia, Ramer, Steinhart, Rodgers, Baddick, O'Brien, Bora, and Williams, but he opposed the corrections defendants' motion to

the extent that it seeks summary judgment for his purported failure to exhaust administrative remedies. (*Id.*) After review of all briefs and submitted materials, the court granted corrections defendants motion for summary judgment in-part, particularly in favor of all defendants other than Torres, Martin, Gavala, Derr, and Matrey ("the remaining corrections defendants"), and found that corrections defendants failed to address plaintiff's Eighth Amendment claims arising from the February 24, 2020 shower fall (the "shower fall claim"). (Docs. 81-82). Accordingly, the court granted the corrections defendants leave to file a second motion for summary judgment with respect to the shower fall claim—the instant motion before this court. (Doc. 84). Along with their motion, the corrections defendants submit a brief in support thereof and a statement of facts. (Docs. 85 and 86). Plaintiff responds with a brief in opposition thereof and a responsive statement of facts. (Docs. 92 and 93). With the corrections defendants' reply brief received on March 11, 2025, (Doc. 96), the second motion for summary judgment is now ripe for review.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the case under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Aetna Cas. & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). The court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge that burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could

find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23; *Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

## III. DISCUSSION

Corrections defendants contend that the court should enter summary judgment in their favor on the shower fall claim because Andino-Hernandez failed to administratively exhaust that claim. (Doc. 96 at 3). Exhaustion of administrative remedies in the DOC is governed by the three-step process outlined in the DOC's grievance policy, DC-ADM 804. (*See* Doc. 67-1 at 7-41). Under DC-ADM 804, a prisoner must first submit a written grievance

within fifteen working days from the date of the incident. *Id.* §1(A)(8). DC-ADM 804 provides that the grievance must include "a statement of the facts relevant to the claim," "identify individuals directly involved in the events," and "specifically state any claims [the inmate] wishes to make concerning violations of Department directives, regulations, court orders, or other law." *Id.* §1(A)(11). Next, the prisoner must submit a written appeal to an intermediate review level within fifteen working days. *Id.* §2(A)(1)(a). Finally, the inmate must submit an appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") within fifteen working days. *Id.* §2(B)(1)(b).

Andino-Hernandez filed grievance no. 853835, which mentions the shower fall, on March 5, 2020. (*See* Doc. 86 ¶ 10 and Doc. 93 ¶ 10). Andino-Hernandez then appealed the Facility Grievance Coordinator's response to that grievance to the Facility Manager, but did not appeal the Facility Manager's decision to SOIGA within the fifteen working day window provided by DCM 804. (*See* Doc. 86 ¶¶ 12-13 and Doc. 93 ¶¶12-13). When SOIGA received the appeal, three weeks late, it was rejected as untimely. (*Id.*) These facts are undisputed. Given the untimely appeal, corrections defendants argue that the plaintiff failed to properly exhaust all available administrative remedies regarding the shower-fall claim. Plaintiff, on the other hand,

counters that his appeal was untimely due to the consequences of COVID-19 lockdown measures, whereby he was denied access to those administrative remedies. (Doc. 92 at 4 and Doc. 93 ¶¶ 15-20).

A prisoner is only required to exhaust administrative remedies that are "available." *Rinaldi v. United States*, 904 F.3d 257, 268 (2018) (citing *Woodford*, 548 U.S. at 93). An administrative remedy is unavailable, and administrative exhaustion is thus excused, in three situations: "(1) when 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when it is 'so opaque that it becomes, practically speaking, incapable of use,' such as when no ordinary prisoner can discern or navigate it; or (3) when 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Id.* at 266-67 (quoting *Ross v. Blake*, 578 U.S. 632, 643-44 (2016)). If defendants establish failure to exhaust administrative remedies, the burden shifts to the plaintiff to show that the administrative remedy process was unavailable. *Id.* at 268.

Here, Andino-Hernandez asserts that the COVID-19 lockdown measures prevented him from accessing the law library and making copies of his grievance in the form of a photocopy, which he contends was needed for his SOIGA appeal. (Doc. 92 at 5 and Doc. 93 ¶¶ 17-20). Plaintiff submitted

a request to make copies with the librarian, Ms. Stewart, who denied the request until the COVID-19 restrictions were lifted. (*Id.*) Furthermore, plaintiff asserts that, before the appeal window closed, he wrote to SOIGA—on March 28, 2020—requesting a time extension to file his appeal but never received a reply. (Doc. 92 at 5 and Doc. 93 ¶¶ 19-22). Accordingly, plaintiff argues that the administrative remedy process became unavailable. The court disagrees.

First, corrections defendants correctly note that Andino-Hernandez was not required to submit a "photocopy" of the grievance; he was only required to submit a "legible copy" of that document. Andino-Hernandez writes that DC-ADM 804 §2.B.1.j.(1)-(7) states that " 'an inmate appealing a grievance to final review is responsible for providing SOIGA with all reqired [sic] documentation relevant to the appeal. All submitted documentation must be a <u>copy</u> and cannot be handwritten." (Doc. 92 at 4) (emphasis in original). This is a plain mischaracterization of the policy. The provision mandates that "the copies of the initial <u>review response/rejection</u> and the Facility Manager/designee's <u>decision</u> cannot be handwritten." DC-ADM 804 §2.B.1.j.(7) (emphasis added). However, Mr. Andino-Hernandez does not claim he needed copies of those documents. Rather, he bases his unavailability argument entirely on his purported inability to make a copy of

his original grievance. (*See, e.g.*, Doc. 92 at 5 ("Plaintiff wrote to the librarian … requesting to make the necessary copies of the aforesaid grievance); *id.* ("Plaintiff wrote a letter … apprising them of [his] inability to obtain copies of grievance no. 853835"); *id.* ("Andino-Hernandez … request[ed] an extension of time … by requesting to make the necessary copies of the grievance"); Doc. 93-1 ¶ 8 ("I wrote … that I could not obtain copies of my grievance needed to submit for final appeal"); *id.* ¶ 11 ("Covid-19 lockdown and the restrictions prevented me from obtaining copies of grievance (853835) and subsequently caused me to submit an untimely appeal of that grievance"). But there is no restriction against providing a handwritten copy of the initial grievance. *See id.* §2.B.1.j.(1)-(7). The policy merely mandates that "a legible copy of the Initial Grievance" be included in a proper appeal.  *Id.* §2.B.1.j.(1). Thus, Mr. Andino-Hernandez's argument that the administrative remedy process was made unavailable to him because he was unable to make a photocopy of his initial grievance to submit to SOIGA is unavailing. Further undermining this argument, Mr. Andino-Hernandez himself concedes that when he ultimately did submit his untimely appeal, he sent in the original of that grievance. (Doc. 93-1 ¶ 10 ("I was then forced to send the originals of

grievance (853835) to final review."). While that appeal was rejected, it was not because he submitted the original copy of that grievance.[1]

Second, even if Andino-Hernandez was required to provide photocopies of his grievance, he was not barred from obtaining such photocopies, only from being able to make them himself, in-person. When Andino-Hernandez submitted his April 1, 2020 Form DC-135A inmate request asking to travel to the law library and make "cop[ies] of some paperwork," the request was denied and he was told by the librarian, "[w]e are not scheduling people to make copies until the Governor lifts the disaster emergency." (Doc. 93-1 at 4) (emphasis added). However, Mr. Andino-Hernandez was entitled to request copies to be made on his behalf—critically, he did so, and the request was fulfilled. (*See* Doc. 96-1 ¶ 7). Accordingly, this excuse is equally as unpersuasive as the former.

Corrections defendants have successfully established that Mr. Andino-Hernandez failed to exhaust his administrative remedies regarding the shower-fall claim, and Mr. Andino-Hernandez has failed to affirmatively show

---

[1] Corrections defendants note that during the time of the above events, SOIGA had a special "Action Required" form it used when an appeal was missing the required "legible copy" of the grievance. (*See, e.g.,* Doc. 67-2 at 8). There is no evidence that such form was used by SOIGA in connection with Andino-Hernandez's appeal of grievance no. 853835.

his administrative remedies were unavailable to him. *Hardy v. Shaikh*, 959 F.3d 578, 587 (3d Cir. 2020) (after the prison official "has established that [an] inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him"). Accordingly, the court will enter summary judgment in the remaining corrections defendants' favor.[2]

## IV.    CONCLUSION

For the foregoing reasons, the court will grant corrections defendants' second motion for summary judgment with respect to plaintiff's remaining Eighth Amendment claim. An appropriate order shall issue.


*s/ Malachy E. Mannion*
**Malachy E. Mannion**
**United States District Judge**

**Dated: May 12, 2025**
21-1570-03

---

[2] Corrections defendants advance the argument that summary judgment should be entered in their favor because, *arguendo*, Andino-Hernandez failed to address the shower-fall claim when responding to their first motion for summary judgment and effectively waived that claim. (Doc. 96 at 1-3). In light of the judgment in the corrections defendants' favor, this argument need not be reached.